ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE COCA-COLA COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action 1:02-CV-2887RWS |
| | ) | |
| v. | ) | |
| | ) | Judge Richard W. Story |
| PEPSICO, INC., RAPAK, LLC, | ) | |
| and DSS RAPAK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF DEFENDANTS IN
OPPOSITION TO THE COCA-COLA COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

EMMET J. BONDURANT
  Bondurant, Mixson & Elmore, LLP
  3900 One Atlantic Center
  1201 West Peachtree Street
  Atlanta, GA 30309-3417

KEITH V. ROCKEY
KATHLEEN A. LYONS
MAURICE E. TEIXEIRA
SANJAY K. MURTHY
  Wallenstein Wagner & Rockey, Ltd.
  311 South Wacker Drive, 53rd Floor
  Chicago, IL 60606-6630

PASQUALE A. RAZZANO
JENNIFER A. REDA
  Fitzpatrick, Cella, Harper & Scinto
  30 Rockefeller Plaza
  New York, NY 10112-3800

Attorneys for Defendants



# TABLE OF CONTENTS

THE BACKGROUND FACTS .............................................................................3

ARGUMENT .................................................................................................11

I.   Rapak and Pepsi Have Established A <u>Prima Facie</u> Case
     That Mr. Rutter Is An Inventor .......................................................13

     A.   While It Now Argues The Contrary, Coca-Cola Insisted
          During The Interference Proceeding That Mr. Rutter
          Conceived A Method For Introducing The Dip Tube
          Into The Bag During Bag Making ....................................15

     B.   Coca-Cola Notwithstanding, The Record Here Establishes
          Conception By Mr. Rutter That Is Indeed Corroborated...............21

     C.   Unfounded Also Is Coca-Cola's Plea That
          Mr. Rutter's Contributions Were Not Inventive ............................24

II.  Coca-Cola's Arguments On Anticipation,
     Once Again, Ignore The Material Facts At Issue.....................................29

III. Mr. Rutter's Contributions To The Subject Matter Of The
     Coca-Cola Patents, Including The Rutter Affidavit And Coca-Cola's
     Arguments Advanced In The Interference, Were Not
     Cumulative Of The Prior Art Before The Examiner................................32

CONCLUSION...............................................................................37

## TABLE OF AUTHORITIES

Abington Textile Machinery Works v. Carding Specialists Ltd.
(D.D.C., 1965) 249 F.Supp. 823............................................................. 28-29

Burroughs Wellcome Co. v. Barr Laboratories, Inc.
(Fed. Cir., 1994), 40 F.3d 1223 .....................................................27

Dibidale v. American Bank & Trust Co.
(5th Cir., 1990), 916 F.2d 300 .......................................................13

Ethicon, Inc. v. United States Surgical Corporation
(Fed. Cir., 1998), 135 F.3d 1456 ............................................. 13-14

Fina Oil And Chemical Co. v. Ewen
(Fed. Cir., 1997), 123 F.3d 1466 ...................................................26

Grundberg, et al. v. The Upjohn Company
(D. Utah, 1991), 137 F.R.D. 365 ...................................................20

The Heil Co. v. Snyder Industries Inc.
(D. Neb., 1991), 763 F.Supp. 422 .................................................20

Hybritech, Inc. v. Monoclonal Antibodies, Inc.
(Fed. Cir., 1986) 802 F.2d 1367 ....................................................14

Kangaroos U.S.A., Inc. v. Caldor, Inc.
(Fed. Cir., 1985), 778 F.2d 1571 ...................................................33

Loctite Corp. v. Ultraseal Ltd.
(Fed. Cir., 1985), 781 F.2d 861 .....................................................29

Molins PLC v. Textron, Inc.
    (Fed. Cir., 1995), 48 F.3d 1172 ....................................................................33


Omega Engineering, Inc. v. Raytek Corporation
    (Fed. Cir., 2003), 334 F.3d 1314 ..................................................................11


Rockwell International Corp. v. United States
    (Ct. Fed. Cl., 1997) 37 Fed.Cl. 478
    aff'd and vacated in part, (Fed. Cir., 1998), 147 F.3d 1358 ...........................12


Schering Corporation v. Geneva Pharmaceuticals, Inc.
    (Fed. Cir., 2003), 339 F.3d 1373 ........................................................... 31-32


SmithKline Diagnostics, Inc. v. Helena Lab. Corp.
    (Fed. Cir., 1988), 859 F.2d 878 ....................................................................14


Technitrol, Inc. v. United States
    (Ct. Cl., 1971), 440 F.2d 1362........................................................................19

The Coca-Cola Company ("Coca-Cola") has asked this Court for partial summary judgment, seeking dismissal of three defenses asserted by defendants PepsiCo, Inc., Rapak, LLC and DSS Rapak, Inc.[*] Specifically, Coca-Cola says that the defenses of joint inventorship, inequitable conduct and "anticipation" should be dismissed.

All of those defenses arise, in one way or another, from the activities of Mr. Christopher Rutter, now an executive with Rapak who, at the relevant time, was a consultant in the packaging industry. Coca-Cola says that the Rapak and Pepsi defenses arising from Mr. Rutter's activities as at least a joint inventor of the Coca-Cola patents must fall because "there is no independent and legally sufficient corroboration" of his activities. Coca-Cola says (Coca-Cola Memo, p. 2):

> "To protect the presumption of a patent's validity
> and to avoid later self-interested claims of
> inventorship, The (sic) Federal Circuit requires
> alleged co-inventors to clearly demonstrate that
> they made an inventive contribution and to
> independently corroborate their contribution."

---

[*] Hereinafter, defendants Rapak, LLC and DSS Rapak, Inc. will be collectively referred to as "Rapak". Defendant PepsiCo, Inc. shall be referred to as "Pepsi".

Coca-Cola thus pretends that Mr. Rutter was, in effect, an interloper alleging without any basis that he is an inventor.

What is so remarkable about Coca-Cola's position is that, far from being an interloper, Mr. Rutter was a witness previously called to testify for and on behalf of Coca-Cola. The very evidence on which Rapak and Pepsi rely to demonstrate Mr. Rutter's activities as an inventor and/or as constituting prior art was evidence that Coca-Cola itself sponsored. It will not escape this Court's attention that never once does Coca-Cola ever acknowledge that it stood as the sponsor of Mr. Rutter's testimony. Indeed, Coca-Cola's position is a blatant disavowal of the very position Coca-Cola itself had taken earlier in time. One reading Coca-Cola's memorandum would never guess that Coca-Cola not only was in league with Mr. Rutter at the time Coca-Cola presented its evidence but, in fact, recruited him as a witness on its own behalf.[*]

---

[*] As will become apparent, Coca-Cola, in its Statement of Undisputed Material Facts, does not even begin to fairly present a complete statement of the facts relevant to its motion, obviously recognizing that a full rendition of those facts would reveal that the facts Coca-Cola refers to are either wrong or disputed.

Coca-Cola's arguments here not only contradict arguments that it made in an earlier interference proceeding, so too Coca-Cola's position is literally built on factual premises that are dead wrong.

## THE BACKGROUND FACTS

Coca-Cola had been using, for a number of years, a bag-in-box configuration in which the collapsible bag included a dip tube inserted into the bag after the bag had been filled with syrup.  The bag and the dip tube were essentially the same as those described in the Credle '636 patent (Exhibit 7).  One of the drawbacks of that system in practice was that the dip tube had to be manually inserted after each bag was filled, slowing down the rate of the filling operation (Defendants' Statement of Material Facts in Support of Their Motions for Summary Judgment, ¶ 11)[*].

_____

[*] Pursuant to Local Rule 56.1(B)(2), Defendants' response to Coca-Cola's Statement of Undisputed Material Facts and Defendants' Statement of Additional Material Facts in dispute accompany Defendants' Memorandum. For ease of reference, Defendants refer to their response to Coca-Cola's statement as "Defendants' Response, ¶ ___"; Defendants' refer to their Additional Statement of Facts as "Defendants' Additional Facts, ¶ ___".

On April 1, 1982, Coca-Cola engineers met with representatives of Champion, Inc., a manufacturer of packaging machinery, as well as a consultant to Champion, Christopher Rutter who was president of Rutter, Pongrass & Associates. During his visit, Mr. Rutter and the Champion representatives discussed Champion equipment available for the manufacture of bags to be used in Coca-Cola's bag-in-box activities (Exhibit 61, pp. C039482-84; Exhibit 96).

In the course of that visit, the drawbacks arising from the manual insertion of the dip tube in Coca-Cola's bags became the subject of discussion. Mr. Rutter proposed at least two solutions to Coca-Cola's packaging problem, involving insertion of the tip tube during the manufacture of the bag. Mr. Rutter explained the operation of a Champion bag making machine which had an extra station which could be modified to insert the dip tube during manufacture of the bag (Exhibit 61, p. C039483; Defendants' Response ¶ 2). Fully corroborating Mr. Rutter's testimony are his own contemporaneous report (Exhibit 61, pp. C039482-84), and the Gliniak report (Exhibit 96), acknowledging that insertion of the dip tube could be made during manufacture of the bag by modifying a spare station on the Champion machine. Mr. Rutter testified that the "creativity and inventiveness"

he brought to the table was how the dip tube could be inserted during the manufacture of the bag (Exhibit 71, pp. 174-76; Defendants' Response, ¶ 17).

Coca-Cola filed a patent application in May of 1984, initially naming its engineer, William C. Credle, as an inventor. That application was nearly identical to the earlier application filed in October of 1983 in the name of Debra Boone* and claimed a bag having a dip strip like that disclosed in the Boone application (Defendants' Additional Facts, ¶¶ 1-2). The Patent Office, in August of 1987, declared an interference between the Credle application and applications owned by two other parties, namely Scholle Corporation and Liqui-Box Corporation. The subject matter in issue in that interference was directed to a method of producing collapsible bags having an "elongated form" or dip strip connected to the spout and positioned between the bag walls before sealing them (Defendants' Additional Facts, ¶ 7).

Coca-Cola recognized, because it did not have the earliest filing date in the interference, that it had an up-hill battle in establishing priority.

---

* Inventor Debra Boone, later in the events relevant here, became Debra Boone Overman. For ease of reference, Rapak and Pepsi will refer to her as Ms. Boone.

Consequently, Coca-Cola focused its efforts on having claims in the interference declared unpatentable over prior art. In fact, when Coca-Cola's in-house lawyer, Thomas Boston, updated its executives on the status of the interference, he wrote (Exhibit 83, p. 1):

> "On the issue of patentability, we believe that we still have a reasonable chance of convincing the USPTO that the count (the claim in the interference) is not patentable."

In an effort to prove the existence of prior art, Coca-Cola's lawyers contacted Mr. Rutter to determine what date Mr. Rutter might establish for conception and reduction to practice of the subject matter disclosed in U.S. Patent No. 4,524,458 to Pongrass (Exhibit 89, pp. R4409-10). Coca-Cola had sought out Mr. Rutter as a witness, preparing for him a draft affidavit to serve as his testimony in the interference proceeding (Exhibit 65; Defendants' Additional Facts, ¶¶ 17-19).

To ensure that Mr. Rutter's testimony satisfied the rules of corroboration, Coca-Cola asked Mr. Rutter to introduce its counsel to E. Bryant White, a former Champion employee. Coca-Cola's counsel contacted Mr. White and prepared for him an affidavit corroborating the facts which Coca-Cola had set

-6-

forth in the Rutter affidavit. Both the Rutter and White affidavits were finalized, executed and submitted by Coca-Cola as part of its record in the interference proceeding in August of 1989 (Exhibit 64; Defendants' Additional Facts, ¶¶ 17-20).

The facts Coca-Cola set forth in the Rutter affidavit flatly contradict virtually every position Coca-Cola now makes respecting Mr. Rutter's activities in its present motion. The substance of the Rutter affidavit is that it was Mr. Rutter, as distinguished from any of the named inventors of the Boone patents, who had conceived of the method for automatically inserting a dip tube into the bag as the bag was being manufactured. Coca-Cola said that Mr. Rutter had made that conception in April of 1982, disclosing it at his April 1 visit to Coca-Cola. His Coca-Cola-drafted affidavit made it clear that he disclosed his conception to Coca-Cola at the April 1, 1982 visit (Exhibit 61, pp. 3-4):

> "I invited them to visit Champion, Inc. to see Champion's bag making machine and discuss the possibility of having a special unit designed that could insert the dip tube between the walls of the bag at the station located between the spout welding station, and a subsequent station at which the edges of the bag walls were welded together to form a bag."

-7-

That testimony is corroborated by Mr. Rutter's Call Report (Exhibit 61, pp. C039482-84). And that report identifies a number of Coca-Cola engineers -- including Mr. Credle and Ms. Gliniak -- as among those persons contacted (Defendants' Additional Facts, ¶¶ 21-22).

Mr. Rutter's Coca-Cola-drafted affidavit also alleged that he had reduced his invention to practice in the "latter part of 1982 or the first several months of 1983" (Exhibit 61, p. 7). Mr. White's affidavit, also submitted by Coca-Cola, corroborates Mr. Rutter's testimony. The White affidavit stated that Mr. Rutter (Exhibit 63, p. 3):

> "... suggested to The Coca-Cola people present the concept of assembling a dip tube into the bag during the bag making process on a Champion bag making machine at a station thereof between the gland (spout) welding station and the bag seam welding station."

Coca-Cola, when it argued its case in July of 1990, took the position that Mr. Rutter's work constituted prior art under § 102(g). Based on Mr. Rutter's work, Coca-Cola argued that the subject matter involved in the interference was not patentable (Exhibit 62, pp. 26-27):

> "In this regard, the record shows that on or about
> (slightly after) April 6, 1982, Christopher Rutter
> conceived the entire method defined by Count 1 of
> this Interference, as set forth in his Affidavit (CRP
> 423). This Affidavit is corroborated by the
> Affidavit of E. Bryant White (CRP 477) who was
> present at a meeting at CCC with Mr. Rutter
> referred to in a call report dated April 6, 1982 (CR
> EX 45). Christopher Rutter in his Affidavit and
> cross-examination deposition, further states that he
> made an actual reduction to practice of a method
> circumscribed by Count 1 of this Interference
> sometime in late 1982 or the early part of 1983."

In sum, Coca-Cola argued that Mr. Rutter did in fact conduct the work that his

affidavit described, that such work was prior art and that his testimony was

corroborated. Coca-Cola repeated the same argument in its reply brief (Exhibit 98,

pp. 20-21; Defendants' Additional Facts, ¶¶ 24-26).[*]

The Board of Patent Appeals and Interferences ruled in favor of the

Liqui-Box inventor, and its decision was, for the most part, affirmed by the United

States Court of Appeals for the Federal Circuit. As a result, the Liqui-Box

---

[*] The Board did not consider Coca-Cola's arguments based on Mr. Rutter's prior
invention. It refused to consider that issue because Coca-Cola did not raise it in
a timely fashion (Exhibit 63, p. 17, note 6; Defendants' Additional Facts, ¶ 27).

application was returned to the Examiner to determine whether the Liqui-Box

inventor, as the victor in the priority proceeding, was entitled to a patent

(Defendants' Additional Facts, ¶¶ 27, 28 and 29). Coca-Cola's first act following

the return of the Liqui-Box application to the Examiner for continued prosecution

was, in a word, revealing. Coca-Cola recognized that the Rutter prior invention

position which it had belatedly raised during the interference proceeding would not

be placed in front of the Examiner. Coca-Cola also recognized that the Rutter prior

invention ("the Pongrass et al. prior art") was material to the prosecution of claims

directed to a dip strip bag and that the duty of candor owed by all applicants to the

PTO demanded that it be brought before the Examiner. As a result, Coca-Cola

wrote to Liqui-Box counsel stating (Exhibit 101, pp. 1-2):

> "We hereby demand and expect that you properly
> execute your and your client's duties of candor to
> the Patent Office by immediately bringing the
> appropriate portions of the interference record
> regarding the Pongrass et al. prior art, and the
> Pongrass et al. (4,524,458), the Cone (2,569,975),
> and the Samuel (2,920,798) patents to the attention
> of the U.S. Patent and Trademark Office."
> (Emphasis added).

-10-

Coca-Cola's counsel, while insisting that Liqui-Box cite the Rutter invention as prior art, failed to do so himself when prosecution of the closely related Boone application resumed (Defendants' Additional Facts, ¶¶ 30-34). The Boone '493 patent issued without the Examiner having considered Mr. Rutter's prior invention or Coca-Cola's arguments based on Mr. Rutter's prior invention; that was true for the '421 and '252 patents as well (Defendants' Additional Facts, ¶¶ 30-34).

## ARGUMENT

Summary judgment is warranted only in those cases where the moving party is entitled to judgment as a matter of law. Unless no reasonable jury could return a verdict for Defendants here, summary judgment must be denied (Omega Engineering, Inc. v. Raytek Corporation (Fed. Cir., 2003), 334 F.3d 1314, 1320). The central theme of Coca-Cola's motion is that Rapak and Pepsi cannot establish the facts on which their positions are based, and that, in all events, Rapak and Pepsi could never corroborate those facts as the law demands.

In its papers, Coca-Cola leaves out a highly relevant -- and most certainly motion-defeating -- fact. The very facts on which Rapak and Pepsi rely

were placed before the Board of Patent Appeals and Interferences in the first

instance by Coca-Cola.  Indeed, Coca-Cola authored many of the witness affidavits

on which Rapak and Pepsi rely, and, as amazing as it may be, asserted those very

facts during the interference proceeding.  Having advanced the very position that it

now steadfastly denies, Coca-Cola can hardly be granted summary judgment.

Certainly a reasonable jury could conclude that the facts are as Coca-

Cola originally argued, rather than the facts as Coca-Cola now seeks to portray

them.  That is a compelling -- and complete -- answer to Coca-Cola's first

argument that Rapak and Pepsi cannot prove that Mr. Rutter performed the acts of

conception and reduction to practice.

Equally clear is the record in refuting Coca-Cola's second point,

namely that Rapak and Pepsi cannot establish, as the law demands, corroboration

of Mr. Rutter's  testimony that he performed the acts of prior conception and

reduction to practice.  In the first place, corroboration is a credibility question.  The

Court put it well in <u>Rockwell International Corp.</u> v. <u>United States</u> (Ct. Fed. Cl.,

1997), 37 Fed.Cl. 478, 506 (aff'd and vacated in part, (Fed. Cir., 1998), 147 F.3d

1358):

> "Corroboration is a credibility question.
> Credibility is a fact issue that should not be
> resolved on summary judgment."

Indeed, the Court put it more colorfully in Dibidale v. American Bank & Trust Co. (5th Cir., 1990), 916 F.2d 300, 307-08, when it observed that credibility assessments "are not fit grist for the summary judgment mill."  That spells the death knell for Coca-Cola's motion.

I.    Rapak And Pepsi Have Established A Prima Facie
       Case That Mr. Rutter Is An Inventor

        Whether or not Mr. Rutter is an inventor of the subject matter of the Coca-Cola claims turns on whether he participated in the conception of the invention as claimed.  As the Court observed in Ethicon, Inc. v. United States Surgical Corporation (Fed. Cir., 1998), 135 F.3d 1456, 1460, an inventor must generally contribute to the conception of an invention, defined as:

> "... the formation in the mind of the inventor, of a
> definite and permanent idea of the complete and
> operative invention, as it is hereafter to be applied
> in practice."

As the Federal Circuit held in <u>Hybritech, Inc.</u> v. <u>Monoclonal Antibodies, Inc.</u> (Fed. Cir., 1986) 802 F.2d 1367, 1376, complete conception, under the law, must include every feature of the subject matter claimed.  But that does not mean that each co-inventor must each have a complete conception.  As the Court observed in <u>Ethicon</u> (135 F.3d at 1460):

> "Nevertheless, for the conception of a joint invention, each of the joint inventors need not 'make the same type or amount of contribution' to the invention.  35 U.S.C. § 116.  Rather, each needs to perform only a part of the task which produces the invention."

By the same token, a co-inventor need not make a contribution to the subject matter of each claim.  It is sufficient for a joint inventor to make a contribution to part of a single claim of an invention (<u>Ethicon</u>, 135 F.3d at 1460; <u>SmithKline Diagnostics, Inc.</u> v. <u>Helena Lab. Corp.</u> (Fed. Cir., 1988), 859 F.2d 878, 888).

Applying those ground rules to this case, Coca-Cola's motion for summary judgment, predicated as it is on Coca-Cola's litigation-induced change in position, is doomed.

-14-

A.   While It Now Argues The Contrary, Coca-Cola Insisted During
     The Interference Proceeding That Mr. Rutter Conceived A Method
     For Introducing The Dip Tube Into The Bag During Bag Making

At least one claim in each of the three patents in issue here has been interpreted by Coca-Cola to call for positioning a "liquid passage means" (in the case of claim 1 of the '493 patent) inside the bag prior to forming the bag walls into a bag. And, of course, Coca-Cola alleges that the dip tube in Rapak's accused dip tube bag qualifies as that "liquid passage means". Giving the claims Coca-Cola's interpretation, Mr. Rutter, without any doubt, participated in the conception of positioning the dip tube between the bag walls before they are sealed together to form the bag.

It was, after all, Coca-Cola and its counsel who recruited Mr. Rutter as a witness in the interference in the first instance. It was also Coca-Cola and its counsel who crafted the words describing the facts set forth in the Rutter affidavit. And it was Coca-Cola and its counsel who also submitted that affidavit (and others) outlining the facts demonstrating the conception and reduction to practice of Mr. Rutter of a method of positioning the dip tube between the bag walls and

-15-

before they were sealed together and the corroboration of his acts of invention by

Mr. White and others (Defendants' Additional Facts, ¶¶ 17-23).[*]

Coca-Cola never once acknowledges that it actively solicited Mr.

Rutter's testimony. This Court will look in vain in both Coca-Cola's Memorandum

as well as its Statement of Material Facts for any substantive discussion of the

interference proceeding, wholly apart from an acknowledgement of the positions

that Coca-Cola took in the course of the interference. Those facts alone defeat

Coca-Cola's motion.

Indeed, this record is clear that the affidavit prepared by Coca-Cola

for Mr. Rutter described Mr. Rutter's conception (Exhibit 61, pp. 3-5):

> "... it was immediately apparent to me that the best
> way to accomplish this increased speed of
> automation was to insert the dip tube into the bag
> during the bag making process on the Champion
> bag making machine that I was very familiar
> with."

---

[*] Not only did Coca-Cola carefully describe Mr. Rutter's conception when it
drafted his affidavit. So too Coca-Cola's lawyers prepared Mr. Rutter when he
was cross-examined (Defendants' Additional Facts, ¶ 23).

And that was fully corroborated by Mr. White by way of the affidavit that Coca-Cola submitted (Defendants' Additional Facts, ¶¶ 20 and 22).

There can thus be no dispute that Mr. Rutter at least participated in the conception of that claimed feature -- the method of inserting the dip tube into the bag during bag making.  Nor can there be any real dispute that Ms. Boone did <u>not</u> participate in that conception.  In her interference affidavit, Ms. Boone acknowledged that she received a copy of the Gliniak report of April 23, 1982 describing Mr. Rutter's visit (Exhibit 75, p. 2) [*]; Ms. Boone, after reading that

---

[*] On page 17 of its Memorandum, Coca-Cola argues that Rapak and Pepsi cannot show, "through corroborated testimony" that Mr. Rutter's conception of the method for inserting the dip tube into the bag during bag making was communicated to Ms. Boone before she in turn made her alleged conception on December 17, 1982.  That argument is given a quiet burial by the Boone affidavit itself where she states under oath that she received a copy of the Gliniak report.  She also states that she became aware during "the remainder of the year 1982" of Coca-Cola's desire to "insert the dip tube into the bag during the manufacture of the bag" (Exhibit 75, p. 2).  Apart from that acknowledgement, Mr. Rutter has testified that he had a number of discussions with Ms. Boone on that very subject (Exhibit 60, p. 34; Defendants' Response, ¶ 16).  Moreover, Coca-Cola's position is premised on an argument that Ms. Boone and Mr. Rutter did not work together eliminating him as a co-inventor.  Coca-Cola's view of the law is clearly wrong; under 35 U.S.C. § 116, co-inventors "need not physically work together at the same time", they "need not make the same type or amount of contribution" and they "need not make a contribution to the subject matter of each claim".

report, became aware of Coca-Cola's desire to insert the dip tube into the bag during manufacture of the bag (Exhibit 75, p. 2). Since Ms. Boone never even learned of the need to put the dip tube in the bag during manufacture until after the Rutter meeting, there can be little doubt that Ms. Boone did not conceive of that claimed feature.

Nor can there be any debate that the added inventor, Mr. Tomic, did not participate in the conception of a method of inserting the liquid passage means into the bag during bag manufacture. In Coca-Cola's petition to add him as an inventor, Coca-Cola described his role in the development of the patented bags thus (Exhibit 23, p. 88):

(1)    Mr. Tomic made "test samples of bags with dipstrips secured therein according to the conception explained to him by Boone" in December of 1982.

(2)    Mr. Tomic also developed "different ways of attaching the dipstrip" in the bags.

-18-

Coca-Cola could not even pretend that Mr. Tomic participated in the conception of inserting the dip tube in the bag during manufacture.

In sum, the only person that Coca-Cola contemporaneously credited with conceiving the insertion of the dip tube during the bag making process was Christopher Rutter. Coca-Cola's interference record excludes either Ms. Boone or Mr. Tomic as participating in the conception of that claimed technique.[*]

Under the law, the evidentiary record submitted by Coca-Cola -- the affidavits of Ms. Boone and Mr. Rutter and the corroborating affidavit of Mr. White -- qualify as admissions under Rule 801 of the Federal Rules of Evidence. A case in point is <u>Technitrol, Inc.</u> v. <u>United States</u> (Ct. Cl., 1971), 440 F.2d 1362, 1369, where the Court stated:

---

[*] Coca-Cola may argue that it insisted, during the prosecution of the Boone patents that occurred after Coca-Cola was defeated in the interference proceeding, that Ms. Boone was the one who conceived the insertion of the dip tube during the bag making process. The record on that issue is, to put it charitably, confused. Coca-Cola argued in its first preliminary motion filed in November of 1989 that Ms. Boone contributed the idea of the insertion of the dip tube during bag manufacture (Defendants' Additional Facts, ¶¶ 8-9). Coca-Cola then contradicted that position when it later submitted the Boone interference affidavit, alleging that Ms. Boone never even knew about the concept of putting the dip tube into the bag until after Mr. Rutter's contribution. This record is replete with dispute and contradiction.

> "These prior statements cannot be discounted on
> the ground that their substance has not been
> otherwise proved; all that is necessary to constitute
> an admission is a previous statement by an
> adversary party which is inconsistent with the
> position he is taking in litigation.... The trier of
> fact can rightly take account of such admissions,
> although they are not, of course, conclusive if there
> is opposing evidence."

To the same effect is Grundberg, et al. v. The Upjohn Company (D. Utah, 1991),

137 F.R.D. 365, 370.

Standing on different footing are the arguments advanced by Coca-

Cola in its briefs at final hearing in the interference.  Controlling on that issue The

Heil Co. v. Snyder Industries Inc. (D. Neb., 1991), 763 F.Supp. 422, 427, where

the Court admitted such statements as evidentiary admissions, stating:

> "However, 'statements of fact contained in a brief
> may be considered admissions of the party in the
> discretion of the district court.'"

In Heil, the Court went on to observe that such statements describing the evidence

in an interference proceeding were properly treated as admissions (763 F.Supp. at

427):

> "The proffered statements are excerpts from the section of the defendant's trial brief and summarize part of the evidence brought before the Board. As contained in the brief, each statement which has been offered as evidence is followed by citations to the Board record. Snyder's attorneys included these statements in support of the defendant's position regarding Heil's development of the hinge-handle container design and were well within their scope of authority in making those statements."

Clearly Coca-Cola's descriptions of the evidence it presented in the interference are likewise evidentiary admissions.

B.   Coca-Cola Notwithstanding, The Record Here Establishes
     Conception By Mr. Rutter That Is Indeed Corroborated

Coca-Cola argues, both in its Memorandum and its Statement of Undisputed Material Facts, that Mr. Rutter did not disclose how to place the dip tube into the bag during the bag making process (Coca-Cola Statement, ¶ 14; Coca-Cola Memo, p. 8). As Rapak and Pepsi have shown, Coca-Cola's argument on that score is contradicted by several pieces of evidence.

Coca-Cola's argument is contradicted by the Rutter affidavit as well as

the Rutter and Gliniak reports of Mr. Rutter's April, 1982 visit to Coca-Cola

(Defendants' Response, ¶ 14).  Coca-Cola's admission, stated in its brief at final

hearing in the interference proceeding, likewise contradicts Coca-Cola's present

position.  For example, in paragraph 9 of his Coca-Cola drafted affidavit, Mr.

Rutter described adapting the Champion bag making machine (Exhibit 61, p. 5):

> "... it would be easy to adapt the Champion bag
> making machine to this need of inserting the dip
> tube at the time of manufacture because the
> Champion machine had a 'spare station' located
> between the spout welding station and the bag wall
> welding station, which was not presently being
> used for any specific function."

That is an unmistakable conception of the method of inserting the dip tube into the

bag during bag making.

So too, Coca-Cola insisted during the interference proceeding that Mr.

Rutter disclosed his concept of inserting the dip tube into the bag during bag

making (Exhibit 62, p. 26):

> "Accordingly, the evidence clearly shows that
> Christopher Rutter conceived the invention defined
> by the Count of this Interference sometime in April
> of 1982; disclosed it to those present at the
> meeting described in the April 6, 1982 'Call
> Report' ... and reduced the invention to practice in
> late 1982 or the early part of 1983."

Coca-Cola's admissions establish that Mr. Rutter did indeed conceive a method of

inserting the dip tube during the bag making process.  Coca-Cola's arguments now,

seeking to disavow the position it took during the interference proceeding, can do

nothing more than raise a factual issue.

Not only does the record refute Coca-Cola's argument that Mr. Rutter

did not disclose his conception to Coca-Cola, so too is the record clear in

demonstrating that Mr. Rutter's conception was fully corroborated.  In its brief at

final hearing, Coca-Cola stated (Exhibit 62, p. 26):

> "This [Rutter] Affidavit  is corroborated by the
> Affidavit of E. Bryant White ... who was present
> at a meeting at CCC with  Mr. Rutter referred to in
> a call report dated April 6, 1982."

-23-

After insisting that Mr. White and the contemporaneous reports corroborated Mr. Rutter's testimony during the interference proceeding, Coca-Cola can hardly take a contrary position now. [*]

C.    Unfounded Also Is Coca-Cola's Plea That
      Mr. Rutter's Contributions Were Not Inventive

In asking this Court to strike the defense that Mr. Rutter is a co-inventor, Coca-Cola says (Coca-Cola Memo, p. 13):

> "Summary judgment striking this defense [that Mr. Rutter is not a co-inventor] should be granted because Mr. Rutter did not contribute the idea or method of inserting a dip tube into a bag at manufacture, and the implementation of such a method is not inventive."

---

[*] Coca-Cola made rumblings when its patent expert was deposed that somehow Coca-Cola was not involved in the interference proceeding -- a position that Rapak and Pepsi submit is disingenuous (Exhibit 84, pp. 49-50 and 93-94; Exhibit 67, p. 19). Coca-Cola acknowledged it was the real party in interest when it filed the Credle application, when it represented Mr. Credle in the interference, and when it took the appeal to the Federal Circuit (Exhibit 105; Defendants' Additional Facts, ¶¶ 1, 17 and 28).

Neither of those points is well founded.

First of all, there is no question that Mr. Rutter disclosed to Coca-Cola a method of inserting a dip tube into a bag at manufacture. As Rapak and Pepsi have just shown, Coca-Cola made that argument time and time again in the interference proceeding (Exhibit 62, p. 26; Defendants' Response, ¶¶ 2 and 15; Defendants' Additional Facts, ¶¶ 14-26).

Coca-Cola makes the statement that even Mr. Rutter is unwilling to support such an "outlandish claim" of inventorship (Coca-Cola Memo, p. 14), citing the Rutter depositions. But neither deposition supports that argument. In his deposition of January 2004, Mr. Rutter acknowledged that Coca-Cola recognized the need to insert the dip tube during bag manufacture but did not know how to do it (Exhibit 71, p. 175):

> "Well, I think the point is that in both their minutes
> and my minutes, and the statement that I'd made in
> my affidavit is that they -- I got the feeling that
> they -- you know, they did discuss an elbow, but
> they had no idea how to implement this."

And Mr. Rutter was the one who explained how to do it (Exhibit 71, p. 175):

> "And so I see that my role in this was I know how
> to implement what you -- what we've discussed.
> And that was the -- the creative and the
> inventiveness that I added to this whole discussion.
> And that was -- you know, that's the point that I
> think is important here."

Neither does the Rutter deposition on November, 1989 support Coca-Cola's position. His testimony then was the same as it was in 2004, Mr. Rutter noting that Coca-Cola knew it might be desirable to insert a dip tube during bag manufacture but had no way to do it (Exhibit 60, p. 9).

Coca-Cola's recognition that it might be a good idea to insert the dip tube into the bag during bag manufacture is not a conception. The law demands not only that Coca-Cola have in mind the concept of inserting the dip tube but also some means to do it (Fina Oil And Chemical Co. v. Ewen (Fed. Cir., 1997), 123 F.3d 1466, 1473).

The record here demonstrates that Coca-Cola may well have believed that it would be a good idea to insert the dip tube during bag manufacture. But, as

Mr. Rutter observed, Coca-Cola had no idea how to do it.  Indeed, Ms. Boone

herself questioned the feasibility of inserting the dip tube during bag manufacture

as late as December of 1982 when she wrote (Exhibit 82, pp. C021405-07):

> "What are the functional limitations of the dip
> tube?  Is is (sic) possible to attach the diptube to
> the bag during formation?"

Coca-Cola had, at most, a general goal (Defendants' Response, ¶ 19).  As the Court

said in Burroughs Wellcome Co. v. Barr Laboratories, Inc. (Fed. Cir., 1994), 40

F.3d 1223, 1228):

> "An idea is definite and permanent when the
> inventor has a specific, settled idea, a particular
> solution to the problem at hand, not just a general
> goal or research plan he hopes to pursue."

It may well be that, as the evidence at trial will show, it would have been obvious

within the meaning of 35 U.S.C. § 103 to incorporate the dip tube in the bag during

manufacture, given the general state of the art.  But that matters not in determining

whether Mr. Rutter is a co-inventor.  The claims of the patents-in-suit include the

limitation of inserting the dip tube during manufacture, and the record is virtually

undisputed -- save for Coca-Cola's pretending that the interference never took

place -- in demonstrating that Mr. Rutter did indeed make that contribution.

Surely a finder of fact could conclude that Mr. Rutter made that

contribution and that his contribution was inventive.[*]

Coca-Cola just distorts the law in arguing as it does that Mr. Rutter's

view -- that such dip tube insertion during bag manufacture was "simple" and

"obvious" -- aids its case. The law has long recognized that whether or not subject

matter may have been obvious to an inventor has no bearing on the issue of

obviousness under § 103. The statute is directed to an objective test and hence

what one particular individual, like Mr. Rutter, may think on that subject is of no

consequence (Abington Textile Machinery Works v. Carding Specialists Ltd.

_____

[*] Coca-Cola's pretension that Mr. Rutter's conception of inserting the dip tube
into the bag during manufacture is not "inventive" is yet another studied
departure from Coca-Cola's earlier position. Coca-Cola argued (Exhibit 70, p.
2) that the "improvement to the prior art Credle and Bond bags" arises where
the dip tube is "placed in the bag before the bag is completely sealed". Coca-
Cola repeatedly made the same argument as to the importance and significance
of inserting the dip tube into the bag during manufacture (Defendants'
Response, ¶ 6).

(D.D.C., 1965) 249 F.Supp. 823, 829).[*]


II.    Coca-Cola's Arguments On Anticipation,
       Once Again, Ignore The Material Facts At Issue


Coca-Cola argues that Mr. Rutter's "ideas" do not anticipate the claims of the Coca-Cola patents because Mr. Rutter's "design fails to meet critical limitations of the patent claims requiring that the channels be transverse to the spout opening and perpendicular to the axis of the spout" (Coca-Cola Memo, p. 18). As such, Coca-Cola urges that defendants' invalidity defense of anticipation based on Mr. Rutter's activities should be summarily disposed of.

Once again, Coca-Cola puts on its blinders as to the facts relevant here. In his work with Coca-Cola, Mr. Rutter's starting point was the bag described in the Credle '636 patent (Exhibit 7), illustrated in Paragraph 8 of Coca-Cola's Statement of Undisputed Material Facts. He conceived of a method for

---

[*] All else aside, Mr. Rutter was not one of "ordinary skill", instead having a much higher level of skill. Thus, his opinion is not the proper standard (Loctite Corp. v. Ultraseal Ltd. (Fed. Cir., 1985), 781 F.2d 861, 874; Defendants' Response, ¶ 19).

placing the dip tube shown in Figs. I and II of Paragraph 8 of Coca-Cola's

Statement in the bag during manufacture of the bag.  Coca-Cola, during the

interference proceeding, took a number of positions in which it characterized the

Credle dip tube bag.  Indeed, in the interference, Coca-Cola described the dip tube

and bag of the Credle '636 patent thus (Exhibit 70, p. 3; Defendants' Response,

¶ 10):

> "Regarding the form being flexibly secured to
> extend transverse to the spout and to swing down
> into the bag during filling, Credle expressly shows
> a flexible connection (Fig. 7, col. 5, lines 35-37) so
> the dip tube can pivot.  This embodiment would
> allow the form to lie flat in the collapsed bag and
> then fall down into the bag during filling."
> (Emphasis added).

As to any modification of that bag, Coca-Cola further argued (Exhibit 70, p. 3):

> "Even without the Fig. 7 showing in Credle, it is
> clear that this modification of Credle or Bond
> would be made with the form lying flat between
> the walls of the collapsed bag for efficient storage
> and shipping purposes, and since the spout is in a
> side wall, such a form would necessarily extend
> transverse from the spout." (Emphasis added).

-30-

Coca-Cola has thus admitted that the Credle '636 patent disclosed a dip tube that was both "transverse" to the spout and laid "flat between the walls". That dip tube, when inserted into the bag during manufacture as Mr. Rutter had proposed, would necessarily be substantially perpendicular to the longitudinal axis of the spout as Coca-Cola has so plainly demonstrated in its Figure III -- a bag as flat as a pancake.[*]

In short, the evidence from Coca-Cola's own mouth shows that, at the very least, issues of material fact relating to whether Mr. Rutter's activities anticipate, that is, satisfy all of the limitations of even one of Coca-Cola's patent claims (Schering Corporation v. Geneva Pharmaceuticals, Inc. (Fed. Cir., 2003),

─────────────────

[*]    Coca-Cola loses sight of the fact that it urged the Board to conclude during the interference that like claims were unpatentable in view of the Rutter § 102(g) prior art. Those claims required a dip tube or like form "extending transversely" from the spout, a dip tube or like form to lay "flat between" the bag walls and a dip tube or like form to be "in liquid communication with the spout". Coca-Cola's argument now, that Rutter's prior invention fails to teach the very same limitations it had earlier argued were present, clearly raises disputed facts (Defendants' Additional Facts, ¶¶ 24-26).

-31-

339 F.3d 1373, 1377).  Since that determination is fact specific, summary

judgment is clearly inappropriate.


III.    Mr. Rutter's Contributions To The Subject Matter
        Of The Coca-Cola Patents, Including The Rutter Affidavit
        And Coca-Cola's Arguments Advanced In The Interference,
        Were Not Cumulative Of The Prior Art Before The Examiner


        Coca-Cola argues that it is entitled to summary judgment on

defendants' claim of inequitable conduct arising from Coca-Cola's failure to cite

material prior art, most notably Coca-Cola's failure to cite to the Examiner the

Rutter prior art under § 102(g).  Coca-Cola's excuse for failing to cite that prior art

is based on the notion that "Mr. Rutter's ideas were already before the Patent

Office during the prosecution of the Boone patents", and, as such, "Mr. Rutter's

ideas were cumulative and did not need to be disclosed" (Coca-Cola Memo, p. 21).

Unfortunately for Coca-Cola, that is not the test.[*]

---

[*]  Coca-Cola failed to cite to the Rutter 102(g) prior art not only during the
prosecution of the '493 patent, but also during the prosecution of the '421 and
'252 patents (Defendants' Additional Facts, ¶¶ 31-34).

Under <u>Molins PLC</u> v. <u>Textron, Inc.</u> (Fed. Cir., 1995), 48 F.3d 1172, 1178, a party alleging equitable conduct based on or arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to deceive. The information withheld must meet thresholds of both materiality and intent.

In this case, Coca-Cola does not base its plea for dismissal on the failure of evidence to support a finding of intent to deceive. Instead, Coca-Cola's position is predicated solely on questions of materiality.[*]

As the Court in <u>Molins</u> noted (48 F.3d at 1179), information is "material" when there is a substantial likelihood that a "reasonable examiner"

----

[*]    Coca-Cola's decision to base its motion on issues apart from "intent to deceive" is certainly understandable. Intent to deceive is rarely proven by direct evidence, but rather is established most often through inferences from facts and circumstances surrounding applicant's conduct. Such questions are, of course, questions of fact, rendering "intent to deceive" issues generally inappropriate for disposition on summary judgment (<u>Kangaroos U.S.A., Inc.</u> v. <u>Caldor, Inc.</u> (Fed. Cir., 1985), 778 F.2d 1571, 1577).

would have considered the information important in deciding whether to allow the application to issue as a patent. If the information allegedly withheld is not as pertinent as that considered by the examiner, or is merely cumulative to that considered by the examiner, such information is not material.

In this case, no reasonable finder of fact could conclude that the prior art -- notably including Mr. Rutter's prior invention which is prior art under § 102(g) -- is not material. Indeed, that issue is laid to rest most convincingly by Coca-Cola's own counsel. After losing the interference, Coca-Cola's counsel wrote to his adversary, insisting that Mr. Rutter's prior invention must be disclosed to the Examiner during the prosecution of the Bond application in furtherance of Bond's duty of candor to the PTO (Exhibit 101):

> "We hereby demand and expect that you properly execute your and your client's duties of candor to the Patent Office by immediately bringing the appropriate portions of the interference record ... to the attention of the U.S. Patent and Trademark Office."

Included in the referenced prior art was the "Pongrass et al. prior art", unmistakably referring to Mr. Rutter's work constituting prior invention.

-34-

In this case, that letter from Coca-Cola counsel is highly significant in a number of respects. First of all, it reflects an understanding on the part of Coca-Cola that the Rutter prior invention under § 102(g) was relevant prior art and was prior art which the uncompromising duty of candor demanded be called to the attention of the Examiner. Counsel's letter also constitutes a clear recognition that the Rutter prior art under § 102(g), while raised in connection with the interference proceeding, was not prior art that was otherwise before the Examiner in ex parte prosecution.

In demanding that Bond's counsel call to the Examiner's attention the Rutter prior invention, Coca-Cola has acknowledged the materiality of the prior art. It is material to the patentability of Bond's invention, so too is it material to the patentability of Boone's invention since the Rutter invention preceded both.

Coca-Cola says that it had no obligation to call to the Examiner's attention Mr. Rutter's § 102(g) prior art because it was "cumulative" and "did not need to be disclosed" (Coca-Cola Memo, p. 21). The latter point is, of course, disposed of by the letter from Coca-Cola's counsel, demanding that disclosure in

-35-

furtherance of the duty of candor.

Coca-Cola's argument that the Rutter prior art was "cumulative" stands on no better footing. As Rapak and Pepsi have pointed out, Mr. Rutter's prior art was not cumulative to the Maynard patent (Defendants' Response, ¶ 20). Coca-Cola argued during the prosecution of the application that issued as the '493 patent, that Maynard did not disclose a bag with a liquid passage member that is disposed transverse and perpendicular to the axis of the spout. Coca-Cola also argued that Maynard did not disclose a method for producing a bag having those characteristics (Exhibit 23, p. 129).

Mr. Rutter's § 102(g) prior art contemplated a dip tube that was both transverse and perpendicular to the spout opening -- the very features that Coca-Cola argued that Maynard did not disclose. That demonstrates beyond any real debate that Mr. Rutter's prior invention was far from cumulative. In all events, even if Coca-Cola should adhere to the position that the Rutter prior art was cumulative, its motion hinges on disputed factual questions. That, in and of itself, disposes of Coca-Cola's motion.

Coca-Cola's theory that the defense of inequitable conduct is ripe for summary judgment is unfounded.

## CONCLUSION

Coca-Cola's Motion for Summary Judgment is uniformly lacking in merit and should be denied.

Respectfully submitted,

EMMET J. BONDURANT
  Bondurant, Mixson & Elmore, LLP
  3900 One Atlantic Center
  1201 West Peachtree Street
  Atlanta, GA 30309-3417
  Ph:   404-881-4100
  Fax: 404-881-4111

KEITH V. ROCKEY
KATHLEEN A. LYONS
MAURICE E. TEIXEIRA
SANJAY K. MURTHY
  Wallenstein Wagner & Rockey, Ltd.
  311 South Wacker Drive, 53rd Floor
  Chicago, IL 60606-6630
  Ph:   312-554-3300
  Fax: 312-554-3301

PASQUALE A. RAZZANO
JENNIFER A. REDA
  Fitzpatrick, Cella, Harper & Scinto
  30 Rockefeller Plaza
  New York, NY 10112-3800
  Ph:   212-218-2100
  Fax:  212-218-2200

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE COCA-COLA COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action 1:02-CV-2887RWS |
| | ) | |
| v. | ) | |
| | ) | Judge Richard W. Story |
| PEPSICO, INC., RAPAK, LLC, | ) | |
| and DSS RAPAK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant Rapak, LLC hereby certifies that true and correct copies of the MEMORANDUM OF DEFEFNDANTS IN OPPOSITION TO THE COCA-COLA COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT was served electronically and by Federal Express on the 19th day of March, 2004 on the following counsel:

Joseph R. Bankoff
Clark G. Sullivan
King & Spalding LLP
191 Peachtree Street, NE
Atlanta, GA 30303

and by Federal Express only to:

Thomas G. Sampson, Sr., Esq.
Thomas, Kennedy, Sampson & Patterson
3355 Main Street
Atlanta, GA 30337

One of Defendants' Counsel

ORIGINAL





MAR 2 2 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE COCA-COLA COMPANY, | ) |
| | ) |
| Plaintiff, | ) Civil Action 1:02-CV-2887RWS |
| | ) |
| v. | ) |
| | ) Judge Richard W. Story |
| PEPSICO, INC., RAPAK, LLC, | ) |
| and DSS RAPAK, INC., | ) |
| | ) |
| Defendants. | ) |

DEFENDANTS' RESPONSE TO THE COCA-COLA COMPANY'S
STATEMENT OF UNDISPUTED MATERIAL FACTS SET FORTH
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DEFENDANTS' STATEMENT OF
ADDITIONAL MATERIAL FACTS IN DISPUTE

EMMET J. BONDURANT
  Bondurant, Mixson & Elmore, LLP
  3900 One Atlantic Center
  1200 West Peachtree Street
  Atlanta, GA 30309-3417

KEITH V. ROCKEY
KATHLEEN A. LYONS
MAURICE E. TEIXEIRA
SANJAY K. MURTHY
  Wallenstein Wagner & Rockey, Ltd.
  311 South Wacker Drive, 53rd Floor
  Chicago, IL 60606-6630

PASQUALE A. RAZZANO
JENNIFER A. REDA
  Fitzpatrick, Cella, Harper & Scinto
  30 Rockefeller Plaza
  New York, NY 10112-3800

Attorneys for Defendants



Pursuant to Local Rule 56.1(B)(2), defendants, PepsiCo, Inc. ("Pepsi"), and Rapak, LLC and DSS Rapak, Inc. (collectively referred to as "Rapak") respond to The Coca-Cola Company's ("Coca-Cola") Statement of Undisputed Material Facts submitted with its memorandum of law in support of its motion for partial summary judgment.

Defendants' Response to Paragraph 1:

Defendants admit that the patents-in-suit are U.S. Patent Nos. 5,749,493 ("the '493 patent", Exhibit 2); 5,941,421 ("the '421 patent"; Exhibit 3); and 6,102,252 ("the '252 patent"; Exhibit 4). Each of those patents is a continuation of U.S. Application No. 542,322 ("the '322 parent application"; Exhibit 19) which has been abandoned. *

---

* For Exhibits 1-58, Defendants refer the Court to their Benchbook of Exhibits submitted previously with their motions for summary judgment. For the remaining exhibits, defendants refer to their Benchbook of Exhibits submitted herewith.

Defendants' Response to Paragraph 2:

Defendants deny the "facts" alleged in paragraph 2, confining conception of the invention of the patents-in-suit to Ms. Debra Boone.[*] First of all, Coca-Cola amended the application that issued as the '493 patent to include Mladomir Tomic as a co-inventor of the subject matter of the "invention defined by the Boone patents" (Exhibit 23, pp. 55 et seq.). That constitutes an unmistakable admission that the "invention defined by the Boone Patents" was conceived by not only Ms. Boone but by Mr. Tomic as well. More importantly, defendants contend in their answer and counterclaims that Mr. Christopher Rutter, Rapak's Director of Filling Equipment, is at least a joint inventor of the subject matter claimed in the patents-in-suit. That contention is based, at least in part, on the following material facts.

On May 18, 1984, Coca-Cola filed U.S. Patent Application No. 611,796 in the name of William C. Credle ("the Credle application"; Exhibit 59, pp. 7 et seq.). An interference was declared between the Credle application and

---

[*] Inventor Debra Boone later became Debra Boone Overman. Defendants will refer to her as Ms. Boone throughout this response.

two patent applications owned by others, namely Scholle Corporation ("Scholle") and Liqui-Box Corporation ("Liqui-Box"). The claims to the subject matter of that interference, referred to as the "count", were directed to a method of producing collapsible bags having an elongated form, such as a flat dipstrip (Exhibit 59, pp. 86-89).

Coca-Cola advanced a number of positions in the interference proceeding that now, in this litigation, it completely ignores and/or seeks to directly contradict. For instance, Coca-Cola prepared and submitted an affidavit from Mr. Christopher Rutter. As set forth in that affidavit, in the beginning of April of 1982, Mr. Rutter met with a number of Coca-Cola engineers. At that time, Coca-Cola informed Mr. Rutter of its desire to automate the insertion of the Coca-Cola dip tube into a standard Scholle Bag. Mr. Rutter explained to Coca-Cola engineers his solution to that problem, describing the use of an existing bag making machine from Champion, Inc. ("Champion"). That machine had a spare station between the spout attachment station and the heat-sealing station that would allow for the automatic insertion of the dip tube during the manufacture of the bag. Mr. Rutter further explained that, using the Champion machine, the dip tube would be inserted after the spout was attached and prior to sealing the edges of the bag

-3-

walls (Exhibit 60, pp. 8-9; Exhibit 61, pp. 2-5 and 8-11).

Coca-Cola, in the interference proceeding, took the position that Mr. Rutter conceived of the invention defined by the count at that April visit and reduced that invention to practice in late 1982 or early 1983 (Exhibit 62, pp. 26-27).[*] Coca-Cola submitted an affidavit from Mr. Rutter in support of its argument that he was the inventor of the subject matter of the interference (Exhibit 64, p. C003756). Indeed, Coca-Cola's counsel, Anthony Birch, contacted Mr. Rutter, drafted the Rutter affidavit and prepared Mr. Rutter for his subsequent deposition (Exhibits 65 and 66; Exhibit 66, pp. 19, 23 and 25).

In sum, Coca-Cola's position here contradicts entirely the position it took in the interference proceeding, namely that Mr. Rutter conceived of the invention defined by the count. Indeed, Coca-Cola stood as a sponsor of that testimony which it now seeks to ignore (Exhibit 64).

---

[*] The Board of Patent Appeals and Interferences refused to consider the Rutter prior invention. In the Board's view, Coca-Cola had not raised that issue in the preliminary motion period and had not shown good cause why it was not timely raised (Exhibit 63, p. 17, n. 6).

Of equal importance is the fact that Mr. Rutter himself has testified that he made a contribution to the subject matter of the invention of the Boone patents (Exhibit 61). Coca-Cola's statement that the "invention defined by the Boone patents" was originally conceived by Ms. Boone is plainly contradicted and disputed.

Defendants' Response to Paragraph 3:

Defendants admit that Ms. Boone has testified that she prepared the drawings contained in Defendants' Deposition Exhibit 4.

Defendants' Response to Paragraph 4:

Defendants admit that the claims of the patents-in-suit recite a bag that includes "a liquid passage means", "a liquid passage member" or "a fluid passage member". Defendants deny that the claims of the patents-in-suit include the term "liquid passage structure". Therefore, defendants deny that the claims "recite" either a "liquid passage structure" or a "channel provided by the liquid passage structure" positioned "substantially perpendicular" to the axis of the spout

(See claims of the patents-in-suit, Exhibits 2-4).

Defendants' Response to Paragraph 5:

Defendants deny that claims 1 and 14 of the '493 patent require "that the channel provided by the liquid passage structure" be transverse to the spout opening before the bag is filled with liquid.  Claim 1 requires that the "liquid channel of said liquid passage means" must be "transversely disposed" relative to the longitudinal axis of the spout.  Claim 14 requires that the "fluid passageway" be "transversely disposed across" the spout opening (Exhibit 2, col. 3, ll. 54 et seq.).

Defendants' Response to Paragraph 6:

Defendants deny that the claims of the patents-in-suit include a "liquid passage structure".  Defendants admit that one of the limitations of claim 1 of the '493 patent is that a "liquid passage means" be positioned "inside of said bag wall means prior to forming said bag wall means into a bag".

Defendants also deny that the Patent Office "did not accord" this "requirement" any patentable weight during prosecution. As Coca-Cola is well aware, that "requirement" is a limitation expressed in several of the Coca-Cola patent claims, including claim 1 of the '493 patent. It well settled that each and every limitation of a patent claim is material.

In this instance, the specification of each of the three Boone patents emphasizes the importance of positioning the liquid passage member or liquid passage means prior to formation of the bag (Exhibit 2, col. 1, ll. 55 et. seq.):

> "A further object of the present invention is to provide a flexible conduit for a collapsible bag which can be inserted during the formation of the bag and requires no manipulative steps after filling of the collapsible container."

The express teachings of the patents unequivocally focus on the "importance" of that limitation. That limitation appearing in the claims cannot just be ignored.

Moreover, Coca-Cola repeatedly emphasized the importance of that limitation during prosecution. During the prosecution of the its '322 parent

-7-

application, Coca-Cola touted the importance of positioning the liquid passage

member between the bag walls before sealing of the bag walls (Exhibit 19, pp. 59,

87 and 90-91).  For instance, Coca-Cola stated that (Exhibit 19, p. 87):

> "According to the present invention, this problem
> in the prior art of requiring an additional manual
> method step that prevents automation of the filling
> procedure, is solved by:
>
> (1)   the claimed method of producing a bag 10 in
>       which a flexible, flat, narrow, liquid passage
>       member 34 is placed in the bag during its
>       manufacture and is heat sealed in place and
>       is heat sealed in place inside the bag; and
>
> (2)   the claimed article of a disposable, flexible
>       bag 10 that has a flexible, flat, narrow,
>       elongated liquid passage member 34
>       positioned inside the bag and heat sealed in
>       place inside of the bag and being located in
>       liquid flow communication with the spout
>       20 opening."

During the prosecution of the '493 patent (Exhibit 23, p. 61), Coca-Cola again

argued "it is clear that Overman (Boone) invented the concept of manufacturing a

bag and attaching a dip strip within the bag during the manufacturing of the bag".

<u>Defendants' Response to Paragraph 7</u>:

Defendants admit that Coca-Cola was field-testing, prior to the alleged conception of the subject matter of the Boone patents, a bag that employed the valve and dip tube assembly of Def. DX 249. That same bag is described in U.S. Patent No. 4,286,636 naming William Credle as the inventor (Exhibit 7).

<u>Defendants' Response to Paragraph 8</u>:

Defendants admit that Figure II of Coca-Cola's Statement of Undisputed Material Facts is a photograph of a Def. DX 249, and Figure I is representative of the structure of the dip tube of Def. DX 249. Defendants also admit that Figure III appears to be a photograph of a plain bag into which Def. DX 249 has been inserted.

<u>Defendants' Response to Paragraph 9</u>:

Defendants admit that, in Coca-Cola's operation, the dip tube and valve assembly represented by Def. DX 249 was inserted after the bag was filled

with syrup. However, the record shows that it was also possible to insert the dip

tube and valve assembly of Def. DX 249 before the bag was filled with syrup

(Exhibit 68, p. 11; Exhibit 69, pp. 16-18).


Defendants' Response to Paragraph 10:


Defendants deny the statement of paragraph 10. The photograph of

Fig. III directly contradicts Coca-Cola's statement. As can be seen by the

photograph, while a portion of the dip tube extends coaxially into the spout

opening, a portion of the dip tube is indeed transverse to the spout opening and

substantially perpendicular to the longitudinal axis of the spout.


Moreover, Coca-Cola ignores its earlier description of the disclosure

of the Credle '636 patent and the positions it took in Interference No. 101,823.

There, Coca-Cola described an embodiment of the dip tube and bag of the Credle

'636 patent (Exhibit 70, p. 3):


> "Regarding the form being flexibly secured to extend
> transverse to the spout and to swing down into the bag
> during filling, Credle expressly shows a flexible
> connection (Fig. 7, col. 5, lines 35-37) so the dip tube can

-10-

pivot.  This embodiment would allow the form <u>to lie flat in the collapsed bag</u> and then fall down into the bag during filling." (emphasis added).

Coca-Cola further described modifying that embodiment of the Credle '636 dip tube and bag (Exhibit 70, p. 3):

"Even without the Fig. 7 showing in Credle, it is clear that this modification of Credle or Bond would be made with <u>the form lying flat between the walls of the collapsed bag</u> for efficient storage and shipping purposes, and since the spout is in a side wall, such a form would necessarily extend <u>transverse from the spout</u>." (emphasis added).

Coca-Cola thus admitted that the Credle '636 patent disclosed a dip tube transverse to the spout that laid "flat between the walls" of the bag.  Such a dip tube would necessarily be substantially perpendicular to the longitudinal axis of the spout.  Coca-Cola cannot now present, as "undisputed", facts which directly contradict its previous admissions.

Defendants' Response to Paragraph 11:

Defendants admit that Mr. Rutter is currently the Director of Filling Equipment for Rapak.

Defendants' Response to Paragraph 12:

Defendants admit the facts set forth in Paragraph 12.  Defendants, however, object to Coca-Cola's characterization that Mr. Rutter "allegedly advised Coca-Cola" of his idea to automate the insertion of a dip tube.  As discussed in response to Paragraph 2, during Interference No. 101,823, Coca-Cola prepared and submitted an affidavit by Mr. Rutter describing the April 1982 visit (Exhibits 61 and 64).  Coca-Cola cannot now disavow those statements of fact that it has sponsored.

Defendants' Response to Paragraph 13:

Defendants admit that one of the dip tubes that Mr. Rutter indicated could be inserted during the manufacturing of the bag was the dip tube represented

-12-

by Def. DX 249.  However, as set forth in the Rutter affidavit, other dip tube

designs including, for example, an "elbow" configuration, were also discussed

(Exhibit 61, p. 4).


Defendants' Response to Paragraph 14:


Defendants deny Coca-Cola's statement set forth in Paragraph 14.

The record here shows that Mr. Rutter disclosed to Coca-Cola at the April 1982

visit a method of placing Coca-Cola's dip tube into a bag at the time the bag was

manufactured.  As discussed in response to Paragraph 2, Mr. Rutter described to

Coca-Cola a bag making machine that had a spare station between the spout

attachment station and the heat-sealing station that would allow for automatic

insertion of the dip tube during the manufacture of the bag.  Mr. Rutter indicated

that the insertion of the dip tube would take place after the spout was attached and

prior to the sealing of the bag walls (Exhibit 60, pp. 8-9, Exhibit 61, pp. 2-5).


Moreover, as Mr. Rutter has testified (Exhibit 71, p. 39):


"Q.   Can you give me a little bit more detail on
how you would go about and how -- well,

-13-

just how you would go about heat-sealing that dip tube to the bag?"

"A.   Well, a standard bag machine, a Bag-In-Box bag machine -- let me go back one step further. There were very few Bag-In-Box -- there were very few bag machines that were capable of making a bag with a fitment on it that were available, and I was familiar with this type of technology because that's what Champion had. And so I got the feeling that people that we were talking to did not know how the bags were made and how they could be fabricated and whatever, and we did discuss the fact that the Champion bag machine had a station or room in its format that would allow the feeding of this strip or tube and attachment to it as a part of the bag-making process. And that's what we -- that's what we explained, and that's what we invited people to come and visit. And I believe that subsequently that visit occurred."

Thus, the facts of record show that Mr. Rutter did indeed disclose to Coca-Cola the details of how to place the dip tube into the bag during manufacture.

Defendants' Response to Paragraph 15:

Defendants deny Coca-Cola's statement as contained in paragraph 15 that Mr. Rutter's testimony cannot be corroborated. Coca-Cola took the position during the interference proceeding that Mr. Rutter disclosed to Coca-Cola inventive details of how the Champion bag making machine could be used to insert Coca-Cola's dip tube into a bag when the bag was being manufactured. In short, Coca-Cola stood as a sponsor of Mr. Rutter's testimony during the interference proceeding and now seeks to attack the very evidence itself presented.

As set forth in the response to Paragraph 2, Coca-Cola previously argued that Mr. Rutter was the inventor of the method of placing a dip tube into a bag during the manufacture of the bag. Coca-Cola prepared and submitted an affidavit -- and testimony -- of Mr. Rutter stating as much. In addressing the issue of corroboration of Mr. Rutter's testimony in the interference, Coca-Cola argued in it's Brief at the Final Hearing (Exhibit 62, p. 26):

> "In this regard, the record shows that on or about (slightly after) April 6, 1982, Christopher Rutter conceived the entire method defined by Count 1 of this Interference, as set forth in his Affidavit ....

-15-

> This Affidavit is corroborated by the Affidavit of
> E. Bryant White ... who was present at a meeting
> at CCC with Mr. Rutter referred to in a call report
> dated April 6, 1982.... Christopher Rutter in his
> Affidavit and cross-examination deposition,
> further states that he made an actual reduction to
> practice of a method circumscribed by Count I of
> this Interference sometime in late 1982 or the early
> part of 1983."

Coca-Cola submitted an affidavit of Mr. E. Bryant White to corroborate Mr.

Rutter's statements (Exhibit 72; Exhibit 73, p. 3):

> "During the meeting described in the "Call Report"
> dated April 6, 1982 Christopher Rutter suggested
> to The Coca-Cola people present the concept of
> assembling a dip tube into the bag during the bag
> making process on a Champion bag making
> machine at a station thereof between the gland
> (spout) welding station and the bag seam welding
> station.  Mr. Rutter told them that this could be
> done if they were interested.  As I recall, they were
> very interested in this concept."

Coca-Cola also argued that "testimony other than drawings, such as corroborated

oral testimony, is also admissible to prove" a party's date of invention (Exhibit 74,

p. 9).

Thus the evidence submitted by Coca-Cola itself emphasized the contribution that Mr. Rutter had made and it also emphasized that Mr. Rutter communicated his ideas and suggestions to The Coca-Cola Company. The White affidavit established, as noted above, that Mr. Rutter "suggested to the Coca-Cola people present" at a meeting of April 6, 1982 his inventive suggestions. Mr. White also testified that Coca-Cola was "very interested" in Mr. Rutter's contributions. That testimony offered by Coca-Cola sets at naught the allegations of Coca-Cola's paragraph 15.

Coca-Cola insisted during the interference proceeding that Mr. Rutter disclosed inventive details to Coca-Cola. Coca-Cola also assured the Board during the interference proceeding that Mr. Rutter's testimony was sufficiently corroborated by Coca-Cola's evidence, and is therefore bound by that position here.

Defendants' Response to Paragraph 16:

Defendants deny Coca-Cola's allegations of paragraph 16 to the effect that the communication of Mr. Rutter's disclosures in April of 1982 to the inventors of the Boone patents cannot be corroborated. Wholly apart from the fact

-17-

that Coca-Cola insisted, during the interference proceeding, that it had established

corroboration of Mr. Rutter's contributions, the record proves beyond any real

doubt that Mr. Rutter's inventive contributions disclosed to Coca-Cola in April of

1982 were indeed communicated to the inventors.  The principal Coca-Cola

inventor, Ms. Boone, testified in the interference proceeding that she consulted

with Mr. Credle and Ms. Veronica Gliniak respecting the development of the

invention here in issue (Exhibit 75, p. 2).  Both Mr. Credle and Ms. Gliniak met

with Mr. Rutter at the April 1982 visit with Mr. Rutter as demonstrated by a

document that Coca-Cola prepared (Exhibit 75, pp. C039455-56; Exhibit 61,

pp. C039482-84).  Ms. Boone also acknowledged reading the memorandum

prepared by Ms. Gliniak summarizing the April 1982 visit between Mr. Rutter and

Coca-Cola, and describing Mr. Rutter's suggestions (Exhibit 75, p. 2; Exhibit 76,

p. 54).

Wholly apart from Coca-Cola's acknowledgment of the

communication between Mr. Rutter and Ms. Boone, Mr. Rutter himself described,

again speaking on behalf of Coca-Cola, that he had a number of discussions with

Ms. Boone on the very subject matter in issue (Exhibit 60, p. 34).  And, within six

months of the 1982 visit, all else aside, it was undisputed that Coca-Cola personnel

-18-

flew to California to inspect the Champion bag making machine which Mr. Rutter

had suggested could be modified to insert the dip tube during the bag making

operation (Exhibit 60, pp. 32-33).


In sum, Coca-Cola exhibits an ostrich-like disregard for its own

evidence proving that Rutter's inventive contributions were communicated to the

Coca-Cola inventors.[*]


Defendants' Response to Paragraph 17:


Defendants deny the allegations of paragraph 17 that Mr. Rutter did

not originate the concept of inserting a dip tube into the bag during manufacture.

While it is true that Mr. Rutter testified that "[t]here seemed to be a general

understanding of the need to put the tube into the bag by the Coca-Cola people",

Coca-Cola has cropped its quotation from Mr. Rutter's testimony in the remainder

---

[*]   Indeed, Ms. Boone acknowledges on the face of her affidavit that it was Ms.
Gliniak's report that informed her in the first instance of Coca-Cola's desire to
insert the dip tube during the bag making operation (Exhibit 75, p. 2) .  A
clearer disclaimer that Ms. Boone did not "invent" the insertion of the dip tube
during the bag making process could hardly be made.

of his answer, Mr. Rutter said (Exhibit 60, p. 9):

> "What I presented to them was how to do it. They
> did not seem to have an understanding of the
> equipment to really understand how they might do
> it, but I think in concept they knew -- I get back to
> the obviousness of this thing. It seemed obvious
> that the implementation needed to be done."

Mr. Rutter further testified that the "creativity and inventiveness" that he brought

to the table is how the dip tube could be inserted during the manufacture of the bag

(Exhibit 71, pp. 174-76).

Coca-Cola's "understanding" of the need to insert the dip tube is not

sufficient to qualify as a conception. What Coca-Cola lacked -- and what Mr.

Rutter supplied -- was the concept, that the Champion bag making machine could

be modified to perform the operation.

That aside, Coca-Cola's argument in Paragraph 17 again loses sight of

the fact that it was Coca-Cola in the first instance who argued that it was Mr.

Rutter who conceived of the method of inserting a dip tube into the bag during

manufacture of the bag -- a conception made in April of 1982. Now, Coca-Cola

asks this Court to disregard its own proofs and the arguments made in support of them – plainly an impermissible tactic.

Defendants' Response to Paragraph 18:

Defendants deny Coca-Cola's assertion that Mr. Rutter cannot corroborate originating the concept of inserting the dip tube during the manufacture of the bag, and the contemporaneous documents corroborate his testimony (Exhibits 61, 73 and 75). That alone creates an issue of fact.

Perhaps more importantly, Coca-Cola, during the interference proceeding, argued that Mr. Rutter conceived of the method of inserting the dip tube into the bag as the bag was being manufactured (Exhibit 62, pp. 26-27). Coca-Cola sought to corroborate Mr. Rutter's affidavit testimony during the interference with the further affidavit of E. Bryant White. Based on that, as well as the documentary evidence, Coca-Cola insisted that Mr. Rutter's testimony that he conceived of the method of inserting the dip tube into the bag during manufacture of the bag was corroborated. Coca-Cola cannot, for the reasons provided in response to paragraphs 15-17, argue that the evidence does not represent sufficient

-21-

corroboration in light of the contrary position it took during the interference.

Defendants' Response to Paragraph 19:

Defendants deny Coca-Cola's assertion that Mr. Rutter's disclosure to Coca-Cola was not "inventive". First of all, coca-Cola took a contrary position when it relied on Mr. Rutter's disclosure to Coca-Cola in April of 1982 of the method of inserting the dip tube into the bag during manufacture. That is sufficient to create an issue of fact on that point. Of equal importance, however, is the fact that whether or not a concept was "simple" is entirely irrelevant to issues of either obviousness or non-obviousness. The same is true with respect to the issue of whether Mr. Rutter's disclosure was "obvious" as Coca-Cola urges. Wholly apart from Coca-Cola's having taken a directly contrary position during the interference proceeding, whether or not a concept is obvious to an inventor of that concept is legally irrelevant.

As Dr. Nauman, Coca-Cola's technical expert, states in his rebuttal report (Exhibit 77, p. 3) "to understand the technology and to appreciate the prior art, the equivalent of a baccalaureate degree in chemical or mechanical engineering

is required together with some work experience".  Mr. Rutter received his degree in Electrical Engineering in 1966.  And, at the time of the April 1982 visit with Coca-Cola, Mr. Rutter had approximately ten years of experience in the field of liquid packaging systems including the manufacture, sale and design of liquid packages. Furthermore, Mr. Rutter was the president of Rutter, Pongrass and Associates, Inc. -- a company which specialized in liquid packaging systems  (Exhibit 61, p. 1). Accordingly, Mr. Rutter had more experience than one of ordinary skill in the art as defined by Coca-Cola.

In 1978, Coca-Cola began the development of the automatic insertion of the dip tube.  Coca-Cola focused its efforts on automating the insertion of the dip tube after the bags were filled with syrup (Exhibit 78, p. C033144).  At that time, Coca-Cola believed that "installation of the dip tube into the bag, on a production basis" was not practical (Exhibit 78, p. C033144).  On January 21, 1982, Coca-Cola initiated a project to develop the automation of the insertion of the dip tube after the bag was filled with syrup (Exhibit 79, pp. C028812-14; Exhibit 80, pp. C028894.11-4.12):

> "One area of the filling operation which could be
> more efficient is the insertion of the bag

> valve/diptube assembly into the bag after filling.
> Because there is no available automatic equipment
> to perform this task, this operation is presently
> being done manually."

It was not until after the April 1, 1982 visit with Mr. Rutter that Coca-Cola, in a

memorandum dated April 14, 1982, brought up the possibility of inserting the dip

tube during the manufacture of a bag (Exhibit 81, p. C019734):

> "In my opinion the scope of the project should be
> changed to include the best method of
> incorporation the diptube assembly within the bag.
> Of course, one method is to build a machine which
> is capable of performing the insertion function
> after the bags are filled. Another possibility is to
> place the diptube in the bag at the time the bag is
> manufactured."

Equally important is that even after Ms. Boone allegedly conceived her invention

on December 17, 1982, she prepared a memorandum in which she questioned the

feasibility of incorporating the dip tube into a bag during the manufacture stating

(Exhibit 82, p. C021405):

> "What are the functional limitations of the
> diptube? Is is (sic) possible to attach the diptube to

-24-

the bag during formation?"

Defendants' Response to Paragraph 20:

Defendants deny Coca-Cola's allegations of paragraph 20 that the

Rutter prior art under 35 U.S.C. § 102(g) was cumulative in view of prior art

before the Examiner. Indeed, Coca-Cola took an entirely inconsistent position

during the interference proceeding where Coca-cola argued that the Rutter prior

invention was highly relevant prior art to the patentability of similar claims. Coca-

Cola makes no attempt to show how the contrary position it took during the

interference was incorrect.

Moreover, Mr. Rutter's disclosure to Coca-Cola was not cumulative in

view of U.S. Patent No. 2,891,700 to Maynard ("the Maynard patent"; Exhibit 21).

As Coca-Cola pointed out during the prosecution of the '493 patent, the Maynard

patent does not disclose a bag with a liquid passage member that is disposed

transverse and perpendicular to the axis of the spout or a method of producing a

bag with those interrelationships (Exhibit 23, p. 129). One concept Mr. Rutter

disclosed to Coca-Cola was the welding of a modified dip tube to the "bottom of

the spout" (Exhibit 71, p. 58). Mr. Rutter also disclosed automating the insertion of a dip tube and spout assembly having an "elbow" configuration (Exhibit 61, p. 4).

Those orientations would necessarily result in a bag having a dip tube that was both transverse and perpendicular to the spout opening -- features which Coca-Cola argued that the Maynard prior art patent did not disclose. Thus, the Rutter prior invention was not cumulative. As set forth below, defendants believe that the record shows that a reasonable examiner would have considered Mr. Rutter's disclosure important in deciding whether to allow the patents-in-suit.

Defendants' Statement Of
Additional Material Facts In Dispute


Pursuant to Local Rule 56.1(B)(2), Defendants tender the following additional material facts demonstrating that Coca-Cola's motion for partial summary judgment is based on facts which are clearly disputed and thus must be denied.


1.     On May 18, 1984, Coca-Cola filed an application for patent entitled "A Disposable Liquid Containing and Dispensing Package and Method for Its Manufacture" in the name of William C. Credle ("the Credle application"; Exhibit 59, pp. 7 et seq.).  The specification and drawings of the Credle application were nearly identical to the disclosure of each of the Coca-Cola patents here involved.  Fig. 1 is reproduced on the following page:



2.      Original claim 1 of the Credle application called for a disposable liquid containing and dispensing container having a flat dipstrip located inside of the container in liquid flow communication with a spout opening for aiding the withdrawal of liquid from the container.  The claim also called for the dipstrip to have a plurality of interior passages and a plurality of interior slots that extended substantially the entire length of the flat dipstrip (Exhibit 59, p. 16).  The remaining claims were of like form.

3.      Before the first Office Action, Coca-Cola filed a preliminary amendment adding new claims 16-25 (Exhibit 59, pp. 40 et seq.).  Those newly

-28-

added claims were similar to the original claims, but differed in requiring that the dipstrip be "bonded to said spout" (Exhibit 59, pp. 40-42).

4.      In July of 1985, the Examiner rejected all the claims of the Credle application in view of the prior art (Exhibit 59, pp. 43-50). The Examiner thus concluded that the subject matter of the claims would have been obvious (Exhibit 59, pp. 44-47).

5.      In response to that office action, Coca-Cola, on November 1, 1985, submitted an amendment canceling claims 1-7, 9, 10, 13, 17, 22, 24 and 25 and amending the remaining claims (Exhibit 59, pp. 53-60). In the amended claims, Coca-Cola added limitations requiring that the dipstrip be attached to the spout only along a portion of the circumference of the spout (Exhibit 59, pp. 55-60).

6.      The Patent Office then issued a letter on May 16, 1986 stating that the claims as amended were allowable. However, due to a potential interference, prosecution of the Credle application was suspended for a period of six months (Exhibit 59, pp. 68-69).

-29-

7.     On August 10, 1987, Interference No. 101,823 was declared by the Patent Office between three parties -- Scholle, Credle and Bond. The real parties in interest of the Scholle, Credle and Bond applications were the Scholle Corporation, Coca-Cola and Liqui-Box Corporation, respectively (Exhibit 59, pp. 86-89).* The subject matter of that interference, referred to as the "count", was a method of producing collapsible bags having an elongated form (i.e., a flat dipstrip) connected to a spout that was positioned between a pair of bag walls before the bag walls were sealed. Specifically, the count called for (Exhibit 59, p. 89):

> "The method of producing collapsed bags having spouts with evacuation form unit inserts connected therein which comprises, for each bag, providing an insert with an elongated form upon which the bag can collapse as it is evacuated which has at least on continuous longitudinal open passage along its length and has an inner open end, joining

---

*   Coca-Cola has in the past -- and may attempt to dispute that it was the real party in interest. However, it is beyond any real debate that Coca-Cola was indeed the real party in interest in the interference. Terrell Birch, one of Coca-Cola's attorneys, acknowledged that he represented Coca-Cola and that they paid all fees related to the interference proceeding (Exhibit 67, p. 19; Exhibit 83; Exhibit 84, pp. 49-50 and 93-94; Exhibit 105).

> two opposed webs of material to produce opposed
> walls of the bag, and before joining the webs
> applying a spout to one of the webs extending
> outwardly therefrom and with its inner end open
> and flexibly securing the form, with its inner end
> in liquid communication with the spout and
> extending transversely therefrom to lie flat
> between said opposed webs so that as each
> completed bag is filled with liquid the form will
> swing into the liquid and the bag will collapse
> around it as it is evacuated."

The count of that interference was, in most respects, narrower than the claims of each of the Coca-Cola patents here involved.

8.    Having the earliest application filing date of March 29, 1984, Bond was declared the Senior Party in the interference, followed by Credle and then Scholle. In the first of a series of efforts to obtain an earlier filing date than Bond, Coca-Cola filed a motion related to the inventorship of the Credle application. In Credle Motion I, Coca-Cola sought to correct the inventorship of the Credle application to include Debra C. Boone as a co-inventor (Exhibit 85, pp. C040168-70). In arguing that correction of inventorship was warranted, Coca-Cola stated (Exhibit 86, pp. C040171-72):

"...at the time the subject '796 application was prepared and filed, the invention described and claimed focused on Credle's contribution to the invention. That is, the main emphasis of the application was on the various embodiments of the invention wherein one end of the dip strip was mechanically attached or bonded to the collapsible bag spout."

In the same motion, Coca-Cola added (Exhibit 86, p. C040172):

"Because of this emphasis, less attention was given to Boone's contributions to the invention, which include inter alia, the provision of a dip strip in a collapsible bag during the manufacturing of the bag and the location of one end of the dip strip adjacent to the spout (but not attached thereto) and in liquid communication therewith."

Thus, Coca-Cola believed that the provision of a dipstrip in a collapsible bag during the manufacturing of the bag was Ms. Boone's inventive contribution.

9.     Coca-Cola further explained that prior to filing Credle Motion I, a meeting was held at Coca-Cola to review evidence required for the interference. In that meeting, attorneys for Coca-Cola realized (Exhibit 86, p. C040173):

-32-

> "...that the count of the interference suggested by
> the Examiner emphasized certain features of a
> method of bag manufacture which are more
> properly credited as Boone's invention than
> Credle's. Accordingly, it was determined at that
> meeting that Boone should now be named as a
> joint inventor with Credle in the subject
> application, and that the subject Credle '796
> application should be a Continuation-In-Part of
> Boone application Serial No. 542,322."

Credle Motion I was granted. The interference was re-declared to reflect Ms.

Boone's addition as a joint inventor to the Credle application (Exhibit 87, p. 7).


        10.    At the same time that it filed Credle Motion I, Coca-Cola

attempted to gain priority of invention for Credle's application from the '322 parent

application by filing a "motion for benefit" (Exhibit 88).[*] However, Coca-Cola's

motion for benefit was denied because the Examiner-in-Chief found that the

disclosure of the '322 parent application failed to support certain limitations of the

interference count (Exhibit 87, p. 7). Thus, Coca-Cola was stuck with its original

_____

[*]   A motion for benefit is often filed in such proceedings. For that type of motion
   to be granted, a party must demonstrate that a related patent application
   adequately enables the subject matter of the interference.

filing date of May 18, 1984 -- a date plainly after Bond's filing date of March 29, 1984.

11.    Coca-Cola also submitted a series of motions related to patentability. For example, Coca-Cola moved for judgment against Scholle and Bond, arguing that the claims of those applications were unpatentable under 35 U.S.C. § 102(e) or 103 in view of U.S. Patent No 4,524,458 to Pongrass ("the Pongrass patent"; Exhibit 89). The Pongrass patent was filed on November 25, 1983 and thus was prior art to Scholle, Bond and Credle under 35 U.S.C. § 102(e). However, the Pongrass patent was not prior art to the '322 parent application as it was filed on October 17, 1983. In Credle Motions VII and VIII, Coca-Cola pointed out that the Pongrass patent disclosed a flexible bag having an evacuation member positioned between a pair of bag walls before the bag walls were sealed (Exhibit 90, p. 3; Exhibit 91, p. 2; Exhibit 89, col. 3, ll. 33 et seq.). The evacuation member in the Pongrass patent was positioned adjacent the spout opening and would lie flat in the bag (Exhibit 89, col. 3, ll. 33 et seq., FIGS. 2 and 5).

12.    In addition, Coca-Cola also submitted Credle Motion IX moving for judgment against all of the parties on the ground that the count in the

interference was unpatentable over the prior art. Coca-Cola's first argument was

that the count was unpatentable under 35 U.S.C. § 103 in view of either U.S.

Patent No. 4,286,636 to Credle or U.S. Patent No. 4,138,036 to Bond in

combination with either U.S. Patent No. 2,891,700 to Maynard, U.S. Patent No.

4,381,846 to Heck alone or when considered further with U.S. Patent No.

4,257,535 to Mellett (Exhibit 70, p. 2).


      13.    In describing the novel aspects of the count, Coca-Cola stated

(Exhibit 70, p. 2):

> "The method of Count 1 is an improvement to the
> prior art Credle and Bond bags wherein the form is
> placed in the bag before the bag is completely
> sealed and such that the bag can still lie flat for
> shipping and storage. This is to avoid the time and
> expense of a subsequent, separate step of inserting
> a dip tube in the bag."

Thus, Coca-Cola argued that one of the novel features of the count was the step of

inserting the dip tube into the bag during the bag manufacturing process.

However, Coca-Cola argued that the Maynard patent showed that an "evacuation

form unit insert can be positioned directly in the container when it is made, so that

the separate step of having to insert a dip tube can be omitted" (Exhibit 70, p. 2).

Thus, Coca-Cola concluded (Exhibit 70, p. 2):

> "It would have been obvious from Maynard that
> the separate step in Credle and Bond of inserting a
> dip tube could be avoided by having the form
> positioned directly in the bag during
> manufacturing."

14.    Concerning the limitation that the "evacuation form" described

in the count be transverse to the spout, Coca-Cola argued that the Credle '636

patent (Exhibit 7) showed a flexible connection so that the dip tube could pivot

(Exhibit 70, p. 3).  According to Coca-Cola, the embodiment shown in Figure 7 of

the Credle '636 patent would allow the flexible dip tube to "pivot" and "lie flat"

between the bag walls (Exhibit 70, pp. 3 and 10-11).

15.    In addition, Coca-Cola argued that while the Maynard patent

did not show an evacuation unit transverse to the spout because the Maynard spout

was at the edge of the container, the Heck prior art patent showed a side wall spout

and an evacuation form unit transverse thereto (Exhibit 70, p. 3).  Coca-Cola added

that the Mellett patent (Exhibit 92; Exhibit 70, p. 4):

-36-

> ". . . shows the same bag and spout as in Count 1
> with an insert member which is flexibly secured,
> which lies flat and which is transverse to the
> spout."

Thus, in Credle Motion IX, Coca-Cola admitted that the prior art included

numerous examples of members that were transverse to the spout opening and

would lie flat in a bag.

    16.    The Examiner-in-Chief was not convinced and thus Credle

Motion IX was denied (Exhibit 87, pp. 3-5). In that same decision, the Examiner-

in-Chief deferred decision of Credle Motion VII until the Final Hearing before the

Board of Patent Appeals and Interferences, allowing Scholle an opportunity to

present evidence that it had completed its invention prior to the filing date of the

Pongrass patent. Credle Motion VIII was denied based on Bond's previous

submission of a Rule 131 declaration[*] showing that Bond's invention had been

completed prior to the filing date of the Pongrass patent (Exhibit 87, pp. 6-8).

---

[*]    A declaration under 37 C.F.R. 131 is used to antedate a prior art reference
which substantially shows or describes but does not claim an invention.

17.    After the receiving the Decision on the Motions, Coca-Cola was faced with an uphill battle on the issue of priority.  Coca-Cola decided to focus its efforts on having the count declared unpatentable (Exhibit 83, p. 1).  In a memorandum updating Coca-Cola executives on the progress and estimated costs of the interference, Coca-Cola's in-house lawyer Thomas Boston wrote (Exhibit 83, p. 1):

> "On the issue of patentability, we believe that we still have a reasonable chance of convincing the USPTO that the count (the claim in the interference) is not patentable."

18.    In January of 1989, Anthony Birch, an attorney representing Coca-Cola, contacted Christopher Rutter of Rapak (Exhibit 93).  Mr. Rutter was one of the named inventors of the Pongrass patent (Exhibit 89).  The purpose of Mr. Birch's call was to discover the earliest date that Mr. Rutter could establish for the conception and reduction to practice of the invention disclosed in the Pongrass patent (Exhibit 93).

19.    Thereafter, Mr. Birch had a series of conversations with Mr. Rutter and prepared a draft affidavit for him (Exhibits 65 and 94), outlining

-38-

the facts of Mr. Rutter's conception and reduction of his invention. Mr. Birch forwarded the draft affidavit to Mr. Rutter for his approval (Exhibit 65). Mr. Rutter reviewed the draft affidavit, making only minor changes (Exhibit 64).

20.    In addition, Mr. Rutter contacted E. Bryant White, a former employee of Champion Packaging, to corroborate the facts surrounding Mr. Rutter's conception (Exhibit 95; p. R1115). Mr. Birch contacted Mr. White and prepared an affidavit for him corroborating the facts contained in the Rutter affidavit (Exhibit 95). The Rutter and White affidavits were finalized and submitted by Coca-Cola in the interference on August 28, 1989 (Exhibit 64).

21.    The substance of the Rutter affidavit was that Mr. Rutter had conceived of a method of automating the insertion of the dip tube in April of 1982. Mr. Rutter disclosed his ideas on April 1, 1982 to engineers from Coca-Cola including, among others, William Credle and Veronica Gliniak (Exhibit 61; Exhibit 96, p. 2; Exhibit 97). Mr. Rutter stated that he actually reduced his invention to practice in the "latter part of 1982 or the first several months of 1983" (Exhibit 61, p. 7).

-39-

22.    Mr. White -- further corroborating Mr. Rutter's conception --

stated (Exhibit 73, p. 3):

> "During the visit described in the 'Call Report'
> dated April 6, 1982 Christopher Rutter suggested
> to The Coca-Cola people present the concept of
> assembling a dip tube into the bag during the bag
> making process on a Champion bag making
> machine at a station thereof between the gland
> (spout) welding station and the bag seam welding
> station.  Mr. Rutter told them this could be done if
> they were interested.  As I recall, they were very
> interested in this concept."

23.    After Coca-Cola submitted those affidavits, Mr. Rutter was

advised that his deposition would be taken.  Coca-Cola's attorney sent Mr. Rutter a

letter on November 13, 1989 to help prepare him for that deposition (Exhibit 66);

the deposition was taken on November 17, 1989.

24.    Thereafter, Coca-Cola prepared and filed its Brief at Final

Hearing (Exhibit 62) in the interference.  In that brief, Coca-Cola argued that

Credle Motion VII for judgment against Scholle, which had been deferred until the

Final Hearing by the Examiner-in-Chief, should be granted.  Coca-Cola made

many of the same arguments as before, but also advanced a new argument

(Exhibit 62, p. 25):

> "A further reason for granting CREDLE Motion VII which exists under 35 U.S.C. § 102(g) is the conception and actual reduction to practice of Christopher Rutter, a co-inventor with Pongrass of the subject matter of the '458 patent."

In the same motion, Coca-Cola added ((Exhibit 62, pp. 26-27):

> "In this regard, the record shows that on or about (slightly after) April 6, 1982, Christopher Rutter conceived the entire method defined by Count 1 of this Interference as set forth in his Affidavit (CRP 423). This Affidavit is corroborated by the Affidavit of E. Bryant White (CRP 427) who was present at a meeting at CCC with Mr. Rutter referred to in a call report dated April 6, 1982 (CR EX 45). Christopher Rutter in his Affidavit and cross-examinations deposition, further states that he made an actual reduction to practice of a method circumscribed by Count 1 of this Interference sometime in late 1982 or the early part of 1983. A physical exhibit of the dip tube secured within a bag according to this method was retained by Mr. Rutter and is in the CREDLE Record (CR EX 50 is a photocopy of that physical exhibit)."

25.     According to Coca-Cola, the evidence clearly showed that Mr.

Rutter conceived the invention defined by the count in the interference in April of

1982 (Exhibit 62, p. 26):

> "...disclosed it to those present at the meeting
> described in the April 6, 1982 'Call Report' and
> reduced the invention to practice in late 1982 or
> the early part of 1983."

Thus, Coca-Cola admitted that Mr. Rutter's activities constituted Section 102(g)

prior art.

26.     Coca-Cola did not stop there.  In its reply to the Brief of

Scholle, Coca-Cola reemphasized the very same points again (Exhibit 99, p. 20):

> "...the testimony of record shows that Christopher
> Rutter and co-inventor Pongrass conceived and
> reduced to practice the entire invention of the
> Count of this interference with a conception as
> early as April 6, 1982."

It is worth noting that Mr. Rutter's conception date of April 6, 1982 is well before

Ms. Overman's alleged conception date of December 17, 1982.

27.    In spite of Coca-Cola's efforts, the Board of Patent Appeals and
Interferences in rendering its final decision, did not consider the Rutter § 102(g)
prior invention.  The Board, citing to 37 CFR 1.655(b), refused to consider the
issue because it was not raised during the preliminary motion period --as was
required by the rules -- and Coca-Cola had not shown good cause why it was not
timely raised (Exhibit 63, p. 17, n. 6).  The Board rejected Coca-Cola's remaining
arguments and judgment as to the subject matter of the count was awarded to Bond
(Exhibit 63, p. 22).

28.    Coca-Cola appealed the Board's decision to the Court of
Appeals for the Federal Circuit.  The Federal Circuit reversed a portion of the
decision, but in all other respects affirmed the findings of the Board (Exhibit 99).
After remand, in a Final Decision dated March 25, 1996, the Board once again
found in favor of Bond (Exhibit 100).

29.    Shortly thereafter, upon learning that the Bond application was
being returned to the Examiner for further prosecution, Terrell Birch, Coca-Cola's

-43-

attorney, sent a letter to Tom Boland, counsel for Liqui-Box.  In that letter, Mr.

Birch set the following standard (Exhibit 101):

> "We hereby demand and expect that you properly
> execute your and your client's duties of candor to
> the Patent Office by immediately bringing the
> appropriate portions of the interference record
> regarding the Pongrass et al. prior art, and the
> Pongrass et al. (4,524,458), the Cone (2,569,975),
> and the Samuel (2,920,798) patents to the attention
> of the U.S. Patent and Trademark Office."

Thus, Terrell Birch was aware of the duty to bring certain portions of the

interference record to the Examiner's attention.  Further, Mr. Birch, in referencing

the Pongrass et al. prior art (i.e., the Rutter prior invention) and the Pongrass

patent, demonstrated that he considered those activities as constituting different

forms of prior art.


30.    A few months after Mr. Birch sent his letter to Mr. Boland, the

Patent Office issued an Office Action in the Boone continuation application which

ultimately became the '493 patent (Exhibit 23, pp. 70-76).  All of the claims were

rejected in view of the prior art, including the subject matter which Coca-Cola had

lost in the interference which became prior art under 35 U.S.C. § 102(g) (Exhibit

23, pp. 70-76). In response to that rejection, Coca-Cola submitted an amendment in March of 1997, changing the claims in the application (Exhibit 23, pp. 121-132). In that response, signed by Terrell Birch, Coca-Cola did not bring any portions of the interference record -- and in particular those documents discussing the Rutter prior invention -- to the Examiner's attention. After various formal matters were attended to (and a change of inventorship was made), the claims were allowed and the '493 patent issued on May 12, 1998.

31.    On December 17, 1997, Coca-Cola filed Application Serial No. 08/991,710 which eventually matured into U.S. Patent No. 5,941,421 ("the '421 patent"; Exhibit 3). During the prosecution of that application, Coca-Cola's new counsel, Andrew Stover, filed an Information Disclosure Statement ("IDS") (Exhibit 102, pp. 44-48). That IDS included several references that had not been cited during the prosecution of the '493 patent including U.S. Patent No. 2,569,975 to Cone, U.S. Patent No. 2,920,798 to Samuel and U.S. Patent No. 4,257,535 to Mellett (Exhibit 92; Exhibit 102, p. 45).

32.    The Cone and Samuel patents had been discussed in the letter from Terrell Birch to Tom Boland, but were not cited by Mr. Birch during the

-45-

prosecution of the '493 patent (Exhibit 101). While the Mellet patent had been discussed in Credle Motion IX in support of Coca-Cola's argument that the count in the interference was unpatentable (Exhibit 70, p. 4), Coca-Cola did not bring that reference to the attention of the Examiner when prosecution resumed in the application that eventually became the '493 patent.

33.     The IDS also contained a brief summary of the proceedings in the interference (Exhibit 102, pp 47-48). Completely absent from that summary of the interference proceeding was any mention of the Affidavit of Christopher Rutter. In addition, there was no disclosure of arguments made by Coca-Cola advocating that Mr. Rutter had invented the subject matter of the interference prior to any date of invention alleged by the named inventors of the patents-in-suit.

34.     On April 19, 1999, Coca-Cola filed Application Serial No. 09/295,236 which matured into U.S. Patent No. 6,102,252 ("the '252 patent"; Exhibit 103). On August 2, 1999, Coca-Cola filed a Supplemental IDS which included a summary of the litigation pending between Coca-Cola and Liqui-Box (Exhibit 103, pp. 30-32). Included in that Supplemental IDS was the Answer and Counterclaim of Liqui-Box Corporation and Defendant's Responses to Mandatory

Disclosure (Exhibit 103, p. 31). Once again, there was no mention of the

Affidavit of Christopher Rutter or arguments made by Coca-Cola advocating that

Mr. Rutter had invented the subject matter of the interference prior to any date of

invention alleged by the named inventors of the patents-in-suit.

Respectfully submitted,

EMMET J. BONDURANT
  Bondurant, Mixson & Elmore, LLP
  3900 One Atlantic Center
  1201 West Peachtree Street
  Atlanta, GA 30309-3417
  Ph:   404-881-4100
  Fax:  404-881-4111

KEITH V. ROCKEY
KATHLEEN A. LYONS
MAURICE E. TEIXEIRA
SANJAY K. MURTHY
  Wallenstein Wagner & Rockey, Ltd.
  311 South Wacker Drive, 53rd Floor
  Chicago, IL 60606-6630
  Ph:   312-554-3300
  Fax:  312-554-3301

PASQUALE A. RAZZANO
JENNIFER A. REDA
  Fitzpatrick, Cella, Harper & Scinto
  30 Rockefeller Plaza
  New York, NY 10112-3800
  Ph:   212-218-2100
  Fax:  212-218-2200

Attorneys for Defendants

-47-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE COCA-COLA COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action 1:02-CV-2887RWS |
| | ) | |
| v. | ) | |
| | ) | Judge Richard W. Story |
| PEPSICO, INC., RAPAK, LLC, | ) | |
| and DSS RAPAK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

CERTIFICATE OF SERVICE

        The undersigned counsel for defendant Rapak, LLC hereby certifies
that true and correct copies of the DEFENDANTS' RESPONSE TO THE COCA-
COLA COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS
SET FORTH IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DEFENDANTS' STATEMENT OF ADDITIONAL
MATERIAL FACTS IN DISPUTE was served electronically and by Federal
Express on the 19th day of March, 2004 on the following counsel:

> Joseph R. Bankoff
> Clark G. Sullivan
> King & Spalding LLP
> 191 Peachtree Street, NE
> Atlanta, GA 30303

and by Federal Express only to:

> Thomas G. Sampson, Sr., Esq.
> Thomas, Kennedy, Sampson & Patterson
> 3355 Main Street
> Atlanta, GA 30337

_____
One of Defendants' Counsel